UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YASSER IBRAHIM SOLIMAN,

      Plaintiff,

v.                          CASE No. 8:06-CV-2039-T-TGW

CITY OF TAMPA,

      Defendant.

_____

## O R D E R

The plaintiff in this case applied for a wide variety of jobs with the City of Tampa, and was not hired for any of them.  He alleges in this pro se lawsuit that the failure to hire him was due to discrimination because he was an Arab and a Muslim.  The City responds with a motion for summary judgment, asserting that it hired a better qualified candidate for each position (Doc. 30).  This response imposed upon the plaintiff the burden to show that this articulated reason was a pretext.  The plaintiff, who engaged in no discovery, has not carried his burden.  Accordingly, the motion for summary judgment will be granted.

I.

The plaintiff, Yasser Ibrahim Soliman, is an Egyptian-born Muslim male of Arab descent.  However, he is a naturalized citizen.

The plaintiff has a Bachelor's Degree in mechanical engineering from Mansoura University in Egypt (Doc. 19, p. 3; Doc. 30, Ex. 24, 1st page). In addition, he informed the defendant City of Tampa in connection with his applications for employment that he had many credits towards an Associate's Degree from Tampa Technical Institute in "elec" (Doc. 30, Ex. 24, 1st page).

The plaintiff worked in Cairo, Egypt, primarily as a mechanical engineer during the 1980's in the city's garage supervising bus technicians and also serving on a government committee overseeing the building of a factory (id., 1st-2nd pages).  From 1992 to 1995, the plaintiff worked in Germany in production management and planning, and received a diploma in business management (id., 2nd page).  He also worked as a technician for various companies (id.; Doc. 17, pp. 40-41).  Beginning in 1999, the plaintiff was employed as a technician for the public transit company HARTline in Tampa, Florida, for almost six years (Doc. 30, Ex. 24, 2nd page).  His employment application reflected that he was fired from this job, purportedly

in retaliation for filing with the Equal Employment Opportunity Commission ("EEOC") a complaint of discrimination (id., 5th page). The plaintiff's most recent full-time employer was Gator Leasing where he worked as a technician (Doc. 17, p. 40). He stated that he quit this job because he "got tired of working full-time jobs that ha[d] very little to do with engineering and the educational background that [he] ha[d]" (id., pp. 40-41).

The plaintiff applied for one position with the City of Tampa in 2003 (I & C Electrical Technician) (Doc. 1, Ex. 1, 2nd page). From January to April 2005, he applied for nine different job categories: AWT Plant Technician III, Communications Technician II, Engineer III (Non-Supervisory), Fleet Mechanic Supervisor I, HVAC Mechanic I, Planning Research Analyst II, Sewer Operations Engineer Support Technician, Transportation Technician IV, and Water Services Technician (id., 1st-2nd pages). The plaintiff received an in-person interview for the position of Engineer III (Non-Supervisory), but no others (Doc. 17, pp. 16, 26-27, 28, 29). The plaintiff was not hired for any of the positions.

On August 31, 2005, the plaintiff filed a charge of religion and national origin discrimination with the EEOC (Doc. 1, Ex. 1). He alleged that

in May 2003 he applied for one position, and, between January 2005 and April 2005, he applied for ten others, and that the City refused to hire him because of his national origin (Egyptian) and his religion (Muslim) (id.).[1]

On September 27, 2006, the Department of Justice advised the plaintiff of his right to sue within ninety days of his receipt of the government's letter (Doc. 1, Ex. 2).  The plaintiff timely filed this lawsuit on November 2, 2006 (Doc. 1, p. 1).  He alleges that the City did not hire him for the eleven positions due to his national origin, which he describes as Arab, and his religion, which is Muslim (id., ¶¶ 6, 13).  In a three-count complaint, the plaintiff claims violations of 42 U.S.C. 1981; Title VII of the Civil Rights Act, 42 U.S.C. 2000(e), et seq.; and the Florida Civil Rights Act ("FCRA"), §760.01, et seq., Fla. Stat.

The plaintiff filed this lawsuit pro se.  Subsequently, the plaintiff retained counsel, who submitted a notice of appearance on December 4, 2006 (Doc. 6).  However, counsel filed on May 9, 2007, a motion to withdraw, which was granted (Docs. 12, 14).

_____

[1] The plaintiff alleges that he filed his EEOC charge on, or about, May 30, 2005 (Doc. 1, ¶14), but the exhibit he attached has a date of August 31, 2005 (id., Ex. 1).

The City subsequently filed a motion for summary judgment (Doc. 16). The plaintiff submitted a response (Doc. 19). Following a pre-trial conference, the parties consented to proceed before me (Docs. 24, 25).

The City thereafter sought leave to submit approximately 300 pages of documents in connection with the motion for summary judgment (Doc. 28). This motion was denied without prejudice because these materials were not cited in the summary judgment submissions (Doc. 29). However, the parties were permitted to file amended submissions and to file the materials that were cited in the amended submissions. The City filed on March 27, 2008, an amended motion with related exhibits (Doc. 30).

The motion was scheduled for argument on April 2, 2008. At that time, the plaintiff stated that he had only recently received the amended motion and therefore had not filed a supplemental response. The plaintiff was told that he could file a supplemental response after the hearing. The plaintiff said that that was not necessary since he could state his positions at the hearing. Nevertheless, the plaintiff did file a response to the defendant's amended motion for summary judgment (Doc. 32).[2]   In addition to his

---

[2]The plaintiff's response contained the gratuitous remark "that the president of the united states and his cronies are responsible for the suffering of muslims and non muslims

response, the plaintiff also submitted a series of e-mails between himself and the City (Doc. 32-2).

## II.

The court shall enter summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ. P. 56( c). Material facts are those over which disputes "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant bears the burden of establishing the absence of a dispute over material facts. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).

Where the party opposing the summary judgment motion has the burden of proof at trial, the moving party may discharge its initial burden by identifying specific portions of the record which show the absence of evidence

---

in the united states for their own personal gains and the plaintiff is not responsible if you can not see the evidence of that every day in all aspects of life" (Doc. 32, p. 5). This comment is scandalous and will be deemed stricken pursuant to Rule 12(f), F.R.Civ.P.

to prove the nonmoving party's case at trial.  United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991).  Alternatively, the movant may come forward with "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." Id. at 1438. If the moving party does not meet its burden, then the motion for summary judgment will be denied.  Id. at 1437.

Where the moving party meets its initial burden, the burden then shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  If the party opposing the motion is unable to make a sufficient showing on an element essential to its case on which it has the burden of proof at trial, the movant is entitled to summary judgment. United States v. Four Parcels of Real Property, supra, 941 F.2d at 1438.

In determining whether the moving party should be awarded summary judgment, the court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party.  Reynolds v. Bridgestone/Firestone, Inc., supra, 989 F.2d at 469.  Any reasonable doubts

about the facts are to be resolved in favor of the party opposing the motion for summary judgment. Id.

III.

A.    The City bases its summary judgment motion on the contention that the plaintiff cannot prove the ultimate issue that the City did not hire him for the various jobs due to intentional discrimination, or prove alternatively that its articulated reason for not hiring him was pretextual. Before addressing this issue, however, it is appropriate to point out that one of the statutory grounds for the plaintiff's three counts does not provide a viable basis for a claim.

The plaintiff predicates Count I upon 42 U.S.C. 1981 (Doc. 1, p. 4). However, the Eleventh Circuit held in Butts v. County of Volusia, 222 F.3d 891 (11th Cir. 2000), that §1981 does not provide a cause of action against state actors. Consequently, Count I is properly dismissed.[3]

---

[3]Count I is also problematic because the plaintiff alleges discrimination based on religion and national origin, and §1981 only covers discrimination based on race. See Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987). Arguably, however, the plaintiff's claim could be construed to allege race discrimination, even at this late stage. It is not necessary to resolve this question, since, in all events, a claim predicated on §1981 fails.

The remaining claims of discrimination based upon Title VII and the FCRA are analyzed under the same principles.  See Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1060 (11th Cir. 1994); Bass v. Bd. of County Comm'rs, Orange County, Fl., 256 F.3d 1095, 1109 n. 4 (11th Cir. 2001). Accordingly, the focus of the analysis will be upon the Title VII claim.

For the plaintiff to prove discrimination in an action under Title VII, he must show though the use of direct or circumstantial evidence that the defendant acted with an intentional discriminatory purpose.   Hill v. Metropolitan Atlanta Rapid Transit Authority, 841 F.2d 1533, 1539 (11th Cir. 1988).  In this case, there is no direct evidence of discrimination.  The plaintiff asserts otherwise in his supplemental response (Doc. 32, pp. 4-5).  However, the plaintiff clearly does not know the narrow definition of direct evidence in the context of employment discrimination cases.  Direct evidence is evidence that, if believed, proves the existence of a fact without inference or presumption.  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004).  Only the most blatant remarks, whose intent could be nothing other than to discriminate, constitute direct evidence of discrimination.  Carter v.

City of Miami, 870 F.2d 578, 582 (11th Cir. 1989).  There is no evidence of any such remarks in this case.

In the absence of direct evidence, as here, the plaintiff may create a prima facie case of discrimination in hiring by showing the following factors: (1) he is a member of a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) he was rejected despite his qualifications; and (4) after his rejection, the position remained open and the employer continued to seek applications from persons of complainant's qualifications or the position was filled by a person outside his protected class.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Schoenfeld v. Babbitt, 168 F.3d 1257, 1267 (11th Cir. 1999).  Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the challenged employment action.  Turnes v. AmSouth Bank, N.A., supra, 36 F.3d at 1060.  This burden is "exceedingly light."  Id. at 1061.  The defendant's burden is not one of persuasion; admissible evidence sufficient to raise a genuine issue of fact as to whether it had a legitimate reason for not hiring the plaintiff is enough.  See Texas Dep't of Community Affairs v.

Burdine, 450 U.S. 248, 254-55 (1981). When such a reason is articulated, the presumption of discrimination is eliminated, and the plaintiff must submit evidence showing that the articulated reason is pretextual.   Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).  To avoid summary judgment, the plaintiff must present significant probative evidence on the issue of pretext.  Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996).

The plaintiff has shown that he is a member of a protected class by demonstrating that he is Muslim and an Arab.  He applied for eleven positions with the defendant and other candidates were selected.  The plaintiff argues that he is qualified for the jobs because he has a bachelor's degree in mechanical engineering and has experience in the respective fields.  These circumstances would support a prima facie case.  Although, with respect to some of the jobs, the City could reasonably dispute whether the plaintiff has established a prima facie case, for the purpose of this motion, the defendant concedes that the plaintiff has done so (Doc. 30, p. 11).

The City, in turn, has articulated a legitimate, nondiscriminatory reason for not hiring the plaintiff.  Thus, it stated that it "hired a better qualified candidate for each position" (id.).   It went on to summarize the

application of each successful candidate.  The articulation of this legitimate nondiscriminatory reason shifted the burden back to the plaintiff to present significant probative evidence that this reason was pretextual.

The plaintiff has not made any substantial effort to adduce evidence showing either that his employment denials were the result of intentional discrimination, or that the defendant's articulated nondiscriminatory reason was pretextual.  The plaintiff engaged in no discovery, even during the six-month period when he was represented by counsel.  While the plaintiff did submit with his supplemental response an exchange of e-mails between himself and the City, those e-mails, ironically, strongly undercut his claims.

Furthermore, although the City took, and submitted, the plaintiff's deposition, that deposition also does not help the plaintiff's case. Notably, when defense counsel sought to inquire about the plaintiff's education and experience, the plaintiff stated that that information has already been provided to the City and he declined to discuss those matters (Doc. 17, pp. 6-10).

Aside from the e-mails and the deposition, the evidence consists of an application that the plaintiff submitted for one of the positions (Fleet

Mechanic Supervisor I), the job announcements (with one missing), and the applications submitted by the successful candidates (see Doc. 30).   The limited evidence leaves it unclear what information the plaintiff submitted to the City in connection with each application.   The plaintiff stated in his deposition that he put the same information on each application (Doc. 17, p. 43).  The e-mails from the City indicate otherwise (Doc. 32-2).[4]  Furthermore, the plaintiff was mistaken in saying that "[t]he City of Tampa has all [his] educational records in one place" so that when he "appl[ies] for the job, they just record it" (Doc. 17, p. 43).  The plaintiff had been expressly advised that he "need[ed] to make sure [he] suppl[ies] [his] total work history with all future applications" because the City "do[es] not pull prior applications in evaluating current applications" (Doc. 32-2, p. 5).  Significantly, the plaintiff's pro se status does not excuse his failure to submit in response to the motion for summary judgment all of his employment applications.

The lack of discovery and affidavits also leaves unclear the decisionmaking process for each of the jobs.  The e-mails seem to indicate that the City's Human Resources/Employment Services Department screens and

---

[4]There are two page numbers on the e-mails.  The citations will be to the one that was on the original document, and not to the one added by the electronic filing.

grades the applications and creates what is called an eligible list. The eligible list is then normally sent to the appropriate department, which may interview the applicant either by telephone or in person (id., pp. 11-12). There is no further explanation of the decisionmaking process and, remarkably, no identification of any decisionmakers for the positions at issue.

Moreover, there is not even a showing that the decisionmakers – whoever they were – knew (and cared) that the plaintiff was a Muslim and an Arab. The application form does not ask for, or otherwise reflect, the applicant's religion. Although the plaintiff's application stated that he went to high school in Cairo, Egypt (Doc. 30, Ex. 24, 1st page), it is simply speculation to conclude from that information, and the plaintiff's name, that the various decisionmakers thought that the plaintiff was a Muslim and an Arab, much less that they took those matters into consideration. Notably, while the application asked for the plaintiff's race for equal employment opportunity reporting purposes, the plaintiff simply marked "Black" (id., p. 3).

In light of this state of the evidence, the plaintiff is in an extremely poor position to show that the City's articulated reason for not hiring him is pretextual by demonstrating "such weaknesses, implausibilities,

inconsistencies, incoherencies or contradictions" that a reasonable factfinder would find the reason unworthy of credence. <u>Combs</u> v. <u>Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997). There is no basis in the sketchy evidence to find "implausibilities, inconsistencies, incoherencies or contradictions." The most that might be argued is that there were weaknesses in the City's reason with respect to some of the jobs.

Notably, the fact that the City has conceded that the plaintiff has established a prima facie case gives him no meaningful evidentiary support in this matter. As indicated, the legal presumption of discrimination is eliminated at this point. Moreover, while in some circumstances the evidence that establishes the prima facie case can also be called upon to show discrimination or pretext, the evidence of the prima facie case here would carry no such weight. Thus, the minimal showing required for the prima facie case in this action establishes nothing more than that the failure to hire was consistent with discrimination. In other words, it creates no inference of discrimination greater than an inference that the successful applicant was better qualified.

The plaintiff challenges the City's articulated reason on the basis of his education and experience. Consequently, this case boils down to a

comparison of the overall qualifications of the plaintiff and the successful

applicants.  With respect to such an evaluation, it is important to emphasize

that the court does not act as a super-personnel board that is authorized to

second-guess the employer's decision.  Chapman v. AI Transport, 229 F.3d

1012, 1030 (11th Cir. 2000)(en banc).   Accordingly, the plaintiff must

demonstrate that his qualifications are clearly superior where, as here, there

is no other evidence of discrimination.  See Ash v. Tyson Foods, Inc., 546

U.S. 454, 457-58 (2006).  Stated another way, the "disparities in qualifications

must be of such weight and significance that no reasonable person, in the

exercise of impartial judgment, could have chosen the candidate selected over

the plaintiff for the job in question."  Id. at 457, quoting Cooper v. Southern

Co., 390 F.3d 695, 732 (11th Cir. 2004).   Therefore, the issue is not simply

whether the plaintiff is better qualified for the job.  Cooper v. Southern Co.,

supra, 390 F.3d at 732.

Moreover, a comparison of qualifications is not based on a

plaintiff's own view of his qualifications.  See id. at 743; Holifield v. Reno,

115 F.3d 1555, 1565 (11th Cir. 1997).  Further, contrary to the plaintiff's

apparent notion, an applicant's qualifications are not limited to his education

and work experience.  Rather, an employer may, and regularly does, take into

consideration in a hiring decision such factors as attitude, articulateness, enthusiasm, appearance, common sense, good judgment, originality, ambition, loyalty, and tact.  Chapman v. AI Transport, supra, 229 F.3d at 1033, 1034. While these considerations are subjective, "[s]ubjective reasons can be just as valid as objective reasons."  Id.

B.  An analysis under these principles demonstrates that the plaintiff cannot defeat the City's motion for summary judgment with respect to any of the jobs.  As to some of the jobs, it does not appear that the plaintiff was even the best candidate for the job.  As to the remainder, the plaintiff has failed to show that his qualifications were clearly superior to the successful candidate, particularly when the subjective qualifications are taken into account.

1.  It is appropriate to begin the evaluation of the comparative qualifications for the various jobs with the position of Engineer III (Non-Supervisory) since, due to the e-mails, that is the position about which the most is known.  Moreover, an explication of the e-mails concerning that position sheds light on other positions as well.

In February 2005, the plaintiff applied for the position of Engineer III (Non-Supervisory) in the Engineering Division of the Water

Department (Doc. 1, Ex. 1, 1st page; Doc. 17, p. 16).   The job required a bachelor's degree in engineering from an accredited college or university and considerable engineering experience, including reasonable experience as a project engineer or manager (Doc. 30, Ex. 7, 1st page).   The City sought an individual with extensive knowledge or experience with utility design in general and water line design specifically (id.).   The plaintiff had a degree in mechanical engineering from Mansoura University in Cairo, Egypt.   However, he has no listed experience in the design or engineering of water services (see Doc. 30, Ex. 24).   The plaintiff asserts that "designing a water system is related to the plaintiff's 24 years experience as a mechanical power engineer and a technician" (Doc. 19, p. 5).

The plaintiff states with respect to this application that he "had to call the defendant's human resource many times to set an interview" (id.).   The plaintiff expanded on that in his deposition, stating (Doc. 17, pp. 16-17):

> ... I got an interview after the hassle was made.
> They didn't want to interview me.   So I called.
> When is the interview?   They say they're going to
> call me.   I call again.   When's the interview?   Oh,
> do you know what the requirements is for this
> position?   I said, "Listen, lady.   Don't waste my
> time.   You know that I meet the requirements for
> this position, and if I don't meet it, why are you
> asking me this question?   You already have my

qualifications.  So why are you asking me these questions?  Am I listed on the interview list or not?"

She said wait a second, and then, she comes back and she says, "Okay.  You can come in tomorrow to meet Mister whoever."  I don't remember his name, and I went over there.  I met two guys.  They claimed they are engineers because I asked them at the beginning because I attended many interviews, and they said they are something they are not.

So at the beginning of that interview, which was the only interview I attended with the City of Tampa, I asked them, "Are you engineers?"  They said, "Yes, we are."  And I think the interview went good.

While the plaintiff's application for the Engineer III position was pending, the plaintiff sent the following e-mail to the City (Doc. 32-2, p. 16) (misspellings in original):

i will go to the EEOC to file a discrimination charge against city of tampa, becuase you have lied when you said that the planning analyst is the only position that has been filled in the list of positions i have applied for , and you have lied when you siad that "the department interviewed many elligible  candidates" because i was not personaly interviewed , and if that had happenned , you would have understood that my education / experience is a better match for the position you claimed that "it was the only position that was filled.."

> i do not appreciate lies and it is too late to teach you
> that you too should do the same for that guy whom
> you have selected i wish him very successful bright
> career and the key to that in the city of tampa is to
> stick with the freedom, and you can not do that by
> lies and approve discrimination as a management
> practice.

These accusations, coupled with the "Listen, lady" telephone call, demonstrated to the City that the plaintiff was rude and intemperate. His negative attitude would certainly be a consideration in any employment decision.

Further, the special qualifications of the Engineer III position for which the plaintiff applied included "excellent communications skills" (Doc. 30, Ex. 7, 1st page). The e-mails show that the plaintiff does not meet that requirement.

Regardless of these negative factors, the plaintiff's challenge regarding the position of Engineer III with the City's Water Department clearly fails because his education and experience were not even as good as those of the successful applicant. Janice R. Davis was identified as the person hired for the job. She not only had a bachelor's degree in civil engineering from the University of South Florida, but she had a master's degree in civil engineering from that school as well (Doc. 30, Ex. 8, 2nd page). Moreover, she

had worked for the City's Water Department as an Engineer III before leaving for a job in the private sector (id.). She decided to return to the City because that job involved too many hours (id.). The contention that, with respect to the position of Engineer III with the Water Department, the plaintiff's education and experience are clearly superior to Davis's is frivolous.

It is appropriate to add concerning the interview the plaintiff received regarding this position that the plaintiff dances around an allegation that he was discriminated against because the two men who interviewed him appeared Jewish, with one of them being named Steinberg (compare Doc. 17, p. 19 with pp. 20-26). The plaintiff acknowledged that the interviewers did not say anything that would indicate that they would not select him for the position because he was Muslim or an Arab (id., p. 20). To the extent that the plaintiff is suggesting that the interviewers would be biased against him simply because they were Jewish (if, in fact, they were), that suggestion is rejected. It would be completely anomalous to permit a plaintiff to support a claim of employment discrimination based upon his own stereotypes of a different group of people.

The City also identified a second individual, Melanie K. Calloway, as being awarded the position of Engineer III over the plaintiff.

Both the plaintiff and the City indicate that Calloway received a position in the Water Department (Doc. 30, p. 6; Doc. 19, p. 5). That appeared questionable: Calloway was working for the City in the Transportation Division of the Public Works Department at the time of her application (Doc. 30, Ex. 9, 3rd page), and there was a specific job announcement for Engineer III in the transportation area (Doc. 30, Ex. 7, 3rd page). Moreover, "transportation" was written at the bottom of Calloway's application (id., 1st page). As a result, the City of Tampa's website was viewed and it revealed that Calloway was in fact in the Transportation Division of the Public Works Department (www.tampagov.net). For example, it indicated that "Melanie Calloway, City of Tampa Transportation Department" spoke to the Barrio Latino Commission on November 20, 2007, concerning a particular project (www.tampagov.net/dept_urban_design/files/ARC_BLC_Agendas/ARC_BLC_%20200_Agendas/Revised_BLC_%20Action_11-2-07.pdf).

        In light of this circumstance, any contention that the plaintiff has qualifications for the job that are clearly superior to those of Calloway is baseless. Calloway, who has a bachelor's degree in mining engineering from Virginia Tech, had been working as an Engineer II in the Transportation Division for five years (Doc. 30, Ex. 9, 3rd page). Moreover, her supervisor

commented that "Melanie is an outstanding employee" (id., 6th page). Consequently, Calloway's selection over the plaintiff does not even remotely suggest that discrimination was involved in her promotion.

2.  As the portion of the e-mail quoted above reflects, one of the positions about which the plaintiff raised bitter complaints was Planning Research Analyst II.  The plaintiff's challenge with respect to this job is as meritless as the previous two.

This job required the employee to be "responsible for preparing, analyzing and providing planning research related services" (Doc. 30, Ex. 16). The job announcement stated that "[t]asks are of more than average difficulty involving the provision of research services in support of various planning and other activities" (id.).  Qualifications are graduation from an accredited college or university with a bachelor's degree in planning, public or business administration, social sciences, or a related field and reasonable experience in research or a related field (id.).

The woman from Human Resources/Employment Services explained that there were forty-three eligible candidates for that position (Doc. 32-2, p. 17).   The Strategic Planning Department conducted telephone

interviews at first, and then in-person interviews with the finalists (id.).  The plaintiff received a telephone interview, but not an in-person interview (id.).

Michelle M. Van Loan was selected for the position.  She has a master's degree in public administration from the University of Illinois (Doc. 30, Ex. 17, 3rd page).  Moreover, she was working as a Senior Commissioner's Aide for Hillsborough County, and had previously worked for five years for the City of Kansas City, Missouri, and before that, had been assistant to the Mayor for the Village of Evendale, Ohio (id., 4th page).  The plaintiff's qualifications do not even come close to matching Van Loan's qualifications.  Of course, even if they were similar – and they clearly are not – that circumstance would still fall short of raising an inference of discrimination.

3.  The plaintiff in his complaint also alleges a discriminatory failure to hire with respect to the position of Communications Technician II.  This job includes dispatching calls for police or fire service (Doc. 30, Ex. 5).  The plaintiff in his deposition stated that he applied for this job by mistake (Doc. 17, p. 28).[5]   Accordingly, the plaintiff did not address this job in his

---

[5]It is hard to understand how the plaintiff could have mistakenly applied for this position.  The job announcement expressly states in the first sentence of "Nature of Work" that it "include[s] dispatching calls for police or fire service" (Doc. 30, Ex. 5).  This suggests that during this period the plaintiff applied for any job that had "Technician" in the title.

response to the motion for summary judgment (see Doc. 19, pp. 5-10) and conceded at the hearing that he was not pursuing his claim with respect to this job.  In all events, the successful applicant, Dana L. Rivenbark, had prior experience as a police dispatcher (see Doc. 30, Ex. 6, 4th page), while the plaintiff had no such experience.

4.  The plaintiff also applied for two openings as a Transportation Technician IV.[6]  This position requires "'extensive progressively responsible experience in data analysis, computers or engineering, with reasonable related supervisory experience and experience in Windows 95 or higher versions'" (Doc. 32-2, p. 2).

The plaintiff cannot squeeze a scintilla of discrimination out of the evidence concerning the job of Transportation Technician IV.  With respect to the first opening, which went to Gregory A. Peoples, the plaintiff did not even submit a proper application by the time the selection for this position was completed (Doc. 32-2, pp. 2-3, 5, 7, 8).  Peoples had years of experience in drafting, as a CAD operator, and as a plant engineering technician (id., p. 8).

---

[6]Neither side submitted the job announcement, which describes the nature of the work and the qualifications that are required (see Doc. 30, Exs. 20, 21).  The e-mails, however, do provide pertinent information concerning that job (see Doc. 32-2, pp. 2, 5).

He had been working for the City for about sixteen months as a drafting aide (Doc. 30, Ex. 20, 4th page). His supervisor stated that Peoples was a "very hard working and motivated individual," and was "goal oriented and has shown himself to be proactive in addressing issues related to his responsibilities" (id., 11th page). Upon being informed of this selection, the plaintiff sent an e-mail stating that "it is a good practice to promote in house applicant, and i would agree with you that his or her qualification would make better candidate than i do" (Doc. 32-2, p. 9). The plaintiff has not pointed to any evidence indicating that his assessment was wrong.

The second successful candidate for the position of Transportation Technician IV was Kenneth A. Privette. Privette had worked for the City for fourteen and a half years, apparently throughout that time as an Engineering Technician III (Doc. 30, Ex. 21, 3rd page).[7] Privette's immediate supervisor stated that "Ken is an excellent, hard-working employee" (id., 11th page). Significantly, Privette was given the same grade of 90 that was given to Peoples by the Human Resources Department, and the plaintiff has

---

[7]In his memorandum, the plaintiff asserts, without any citation to the record, that Privette had worked as a Transportation Technician III (Doc. 19, p. 6). I did not see any indication of that in the materials that have been filed. However, if the plaintiff is correct, that would further weaken the plaintiff's contention on this point, since Privette would have had work experience in the specific area to which he had been promoted.

acknowledged that Peoples's qualifications made him a better candidate than himself (see id., 1st page; Doc. 32-2, p. 9).

Further, the plaintiff also recognized that it is a good practice to promote an in-house applicant ( Doc. 32-2, p. 9).  Such an individual is known to the employer with respect to such traits as attitude, work habits, and capabilities, and thus is far less likely than a stranger to surprise and disappoint.  Moreover, an employer could easily conclude that hiring from outside the organization, rather than promoting from within, could have a negative impact upon morale, not only as to the individual that was denied the promotion but also upon employees who are hoping for promotions in the future.  Consequently, Privette's qualifications vis-a-vis the plaintiff are substantially bolstered by the fact that he was a long-time "excellent, hard-working" City employee.

The plaintiff makes no meaningful attempt in his memorandum to demonstrate that, for this particular job, his qualifications are clearly superior to Privette's (Doc. 19, p. 6).  Rather, he merely disparages Privette's high school  education.  However, an employer could reasonably conclude, contrary to the plaintiff's inflated notion of the value of his college education,

that an individual's work experience, and the skills that are acquired doing that work, are more significant in successfully carrying out "technician"-type jobs.

In sum, the plaintiff has failed to come forward with any evidence, much less significant probative evidence, showing that his qualifications for the job of Transportation Technician IV were clearly superior to Privette's. Accordingly, there is no inference of discrimination with respect to this job.[8]

5. Another job for which the plaintiff applied that resulted in a promotion of a City employee was that of Water Services Technician. That position was awarded to Marcus D. McCall, who had been working for the City for over ten years (Doc. 30, Ex. 23, 4th page).[9]

McCall's supervisor wrote on McCall's application: "Excellent Employee! Excellent results when filling in as a Water Services Technician"

---

[8]At the risk of belaboring the lack of merit concerning the claim of discrimination with respect to the job of Transportation Technician IV, it is independently dispositive that the plaintiff was not even placed on the eligible list for that job by the Human Resources Department (Doc. 32-2, p. 17), and thus was not actually in competition with Peoples or Privette. As explained later in connection with the job of Water Services Technician, the evidence negates any inference that the Human Resources Department was discriminating in making that determination.

[9]Arguably, the plaintiff might be unable to demonstrate a prima facie case concerning this job. McCall is Black, and the plaintiff's application stated his race as Black, and did not show his religion or national origin.

(id., 7th page).  Particularly in light of this praise, the plaintiff has plainly failed to show that his overall qualifications were clearly superior to McCall's.

On the other hand, the plaintiff was educationally overqualified for the position of Water Services Technician in view of his degree in mechanical engineering.  Although McCall was a high school graduate with additional vocational education as well, the job itself only required a tenth grade education (id., 4th page; Ex. 22).  The plaintiff, in fact, has acknowledged that he is overqualified for jobs such as this (Doc. 17, p. 30).  Importantly, the Eleventh Circuit has taken judicial notice that "people are often turned away from employment because they are 'over-qualified'" since they are unlikely to spend any substantial time at a job that is below their qualifications.  Woody v. St. Clair County Commission, 885 F.2d 1557, 1561 (11th Cir. 1989).  The plaintiff proved this very point in his deposition, stating that he recently quit a job as technician because he "got tired of working full-time jobs that has very little to do with engineering and the educational background that I have" (Doc. 17, pp. 40-41).

In all events, the e-mails reflect that the Human Resources Department did not include the plaintiff on the eligible list for the job of Water

Services Technician (Doc. 32-2, p. 17).  Consequently, he was not really in competition with McCall for the position.

Furthermore, the Human Resources Department's failure to place the plaintiff on the eligible list for Water Services Technician does not provide a basis for a claim of discrimination.  The e-mails show that, with respect to the ten jobs for which the plaintiff applied, he was placed on the eligible list for five, and was not placed on the eligible list for five others (id., pp. 15, 17). Consequently, no inference of discrimination can arise from the Human Resources Department's determination that the plaintiff should be omitted from the eligible list for a specific job.

In the first place, it seems improbable that the Human Resources Department would engage in discrimination since that is the department responsible for ensuring equal employment opportunities and thus would have developed a particular sensitivity to discrimination.  This view is strongly supported by the professional and helpful approach taken by the woman in the department with whom the plaintiff exchanged e-mails (see Doc. 32-2). Indeed, even after the plaintiff accused her of lying and being involved in discrimination, she, commendably, maintained her professionalism (id., pp. 17-18).

Even more significant in refuting any assertion of discrimination against the Human Resources Department in connection with the determination of the eligible lists is the fact that the plaintiff was on the eligible list for five of the ten jobs he applied for, and those five jobs included the higher paying ones. Under these circumstances, it would be completely implausible to think that the Human Resources Department had a discriminatory animus against Muslims and Arabs.

The conclusion that the Human Resources Department did not discriminate against the plaintiff in preparing the eligible lists defeats, by itself, the plaintiff's claims with respect to the five jobs as to which he was not placed on the lists. Thus, the Human Resources Department's determination removed the plaintiff from competition for those jobs, so that a comparison of the plaintiff's qualifications with those of the successful applicant is immaterial. Of course, it is no answer to argue that the Human Resources Department may have made a mistake in preparing the eligible lists for the five jobs – and there is no evidence that they did – since a claim of discrimination cannot be based merely on an erroneous employment decision. <u>Chapman</u> v. <u>AI Transport</u>, <u>supra</u>, 229 F.3d at 1030. Consequently, the plaintiff's omission from the eligible lists, standing alone, warrants rejection of the plaintiff's claims

concerning the job of Transportation Technician IV, which has previously been discussed, the job of Water Services Technician, which is presently under consideration, and two other jobs which have yet to be addressed.[10]

6. Another job at issue as to which the plaintiff failed to make the eligible list is HVAC Mechanic I (Doc. 30, Ex. 12, 1st page). As previously explained, the plaintiff's omission from the list is enough to defeat this discrimination claim.

Nevertheless, some additional discussion is warranted. The City identifies the successful candidate as Earl J. May. May has extensive training and years of experience in the specific area of HVAC (id., Ex. 13, 3rd-4th pages). For this position, May's qualifications appear clearly superior to the plaintiff's; the reverse is certainly not true.

A question is raised in my mind, however, whether May is the proper comparator. Thus, he was hired for the position of HVAC Mechanic II and his application was submitted more than one and one-half years after the plaintiff's (id.). The plaintiff has not challenged the City's representation that May is the pertinent successful candidate. Since the plaintiff had the burden

---

[10]The plaintiff also did not make the eligible list for the position of Communications Technician II, the police and fire dispatcher job the plaintiff said he applied for by mistake. Nothing more need be said about that position.

to raise a factual issue about the City's submission, there is no basis for concluding that May is not the relevant applicant.

In all events, because the plaintiff did not make the eligible list for HVAC Mechanic I (and, a fortiori, could not make it for HVAC Mechanic II), the issue of who the successful candidate was is not material.

7. The plaintiff also did not make the eligible list for the position of I & C Electrical Technician (Doc. 32-2, p. 17). Since, as previously explained, the Human Resources Department did not engage in discrimination when they prepared those lists, the plaintiff's claim fails as to this job regardless of the qualifications of the successful candidate.

Nevertheless, it is appropriate to add that the plaintiff has not shown that his qualifications are clearly superior to those of Z. Mark Rodgers, the person to whom the position was awarded. The job description states that the employee "[p]erforms highly technical work involving instrumentation maintenance of automation systems and of the host central computer network" (Doc. 30, Ex. 14). In a cover letter submitted with an application and resume, Rodgers, who has years of experience as an electrician, stated that "[t]his position closely resembles work included in my [work] history" (id., Ex. 15, 5th page). This statement is supported by the job descriptions in his application

and resume (id., 6th-7th pages).  The plaintiff, in contrast, makes no meaningful attempt to show that his qualifications are clearly superior to those of Rodgers (Doc. 19, p. 9).

Notably, the plaintiff has said that he was overqualified for this job (Doc. 17, p. 30).  While the plaintiff may have more education than Rodgers, he does not appear to have greater relevant work experience than Rodgers.  Regardless, if he thinks he is overqualified for the job, he would be a poor employment candidate since he would be likely to move on when he saw a job that he considered more suitable.  On the other hand, Rodgers concluded his resume with an enthusiastic statement setting forth reasons why he would be a good employee (Doc. 30, Ex. 15, 5th page).

Accordingly, the plaintiff cannot prevail on his discrimination claim regarding the position of I & C Electrical Technician, both because he did not even make the eligible list for the job, and because his qualifications are not clearly superior to those of Rodgers.[11]

---

[11] It is noted that the plaintiff did not timely exhaust his administrative remedies with respect to this job since he applied in May 2003, and was not hired, and he apparently did not present this claim to the EEOC until August 31, 2005 (Doc. 1, Ex. 1).  The City, however, raises no contention in its summary judgment motion concerning this issue.

8.   The plaintiff also applied for the job of Fleet Mechanic Supervisor I, and he made the eligible list for that position.  As the name suggests, an employee in that job "[p]erforms skilled and supervisory automotive maintenance, repair and servicing work" (Doc. 30, Ex. 10).  That position was awarded to Ronald G. Collins.  Collins, who was entitled to a veteran's preference, had worked for Sterling Trucks of Tampa for the preceding five years as a shop supervisor (Doc. 30, Ex. 11, 3rd page).  The City has not submitted Collins's complete application since his work history prior to 2000 is missing.[12]   The five-year work history with Sterling Trucks, however, provides a valid comparison with the plaintiff because it covers the most recent period, and because it more or less matches the period of the plaintiff's most relevant work experience.  The plaintiff worked for HARTline as a technician doing maintenance and repair of vehicles from July 1999 until February 2005, when he was fired (id., Ex. 24, 2nd page).

Collins was working for Sterling Trucks as a shop supervisor and was supervising fourteen people.  Moreover, Collins advised that he had attended various manufacturers' classes on maintenance and overhaul, product

---

[12]There is an indication that Collins worked for Ross Chevrolet up to September 1989 when new ownership released all staff in management positions (Doc. 30, Ex. 11, 6th page).

updates, and new products being released, and had also attended classes on Kenworth, Ford, Sterling, and Western Star trucks, as well as on several diesel engines (id., Ex. 11, 4th page).

As to this job, the plaintiff in his response to the summary judgment motion argues only that "the plaintiff was not interviewed although he had more education and experience than the comparator" (Doc. 19, p. 9). While the plaintiff may have had more education than Collins, it was not particularly relevant to the job of Fleet Mechanic Supervisor I, and the plaintiff did not have more relevant work experience than Collins for that job. Collins, in my view, plainly had stronger qualifications for the job than the plaintiff. In all events, the plaintiff certainly has not shown that his qualifications for the job are clearly superior to those of Collins.

Moreover, as previously explained, there is more to being a good candidate for employment than meeting the education and experience requirements. And on this aspect of the hiring process, the plaintiff failed badly.

In the first place, it was while the plaintiff's application for Fleet Mechanic Supervisor I was pending on the eligible list that the plaintiff hurled his accusations of lying and discrimination (see Doc. 32-2, p. 16). No

employer would be interested in hiring an applicant who has accused his human resources staff of lying and being engaged in discrimination. While an employer might find acceptable an inquiry about potential discrimination if that is raised in an appropriate and respectful manner, no employer is likely to hire an applicant who blatantly calls his human resources people liars. That conduct is compelling evidence of a bad attitude.

Furthermore, with respect to the job of Fleet Mechanic Supervisor I, the plaintiff's most relevant work experience involved a job from which he was fired. Although the plaintiff sought to justify his termination on the ground that HARTline had retaliated against him because he had filed an EEOC charge (Doc. 30, Ex. 24, 5th page), the City would discount the plaintiff's explanation for his discharge since the City had also been accused by the plaintiff of discrimination, and it had rejected that accusation.[13]

In sum, upon a comparison of relevant work experience, Collins is plainly the better candidate. And when attitude and temperament are taken into account, the disparity in qualifications becomes even greater.

---

[13]It is noted that the plaintiff (under a different name) filed a lawsuit challenging the termination, among other things. Ibrahim v. Hillsborough Area Regional Transit Authority, Case No. 8:05-cv-1235-T-26MAP. United States District Judge Richard A. Lazzara dismissed that claim on a motion for summary judgment (as well as the other claims), and that case has been appealed. Id., Doc. 73.

Consequently, no inference of discrimination can arise from the fact that the job of Fleet Mechanic Supervisor I was awarded to Collins, and not to the plaintiff.

9. The plaintiff also applied for the job of AWT Plant Technician III. This job involves semi-skilled work at the Advanced Wastewater Treatment plant and is of more than average difficulty in the electrical area (Doc. 30, Ex. 2). The City indicates that the plaintiff, through his application, was in competition for two positions (Doc. 30, p. 8).

The first opening was awarded to Scott A. Cermak. Cermak had been working as an electrician for almost twenty-five years (Doc. 30, Ex. 3, 2nd page). In 1989, following a state exam, he received a master electrician contractors license (id., 3rd page).

The second opening was subsequently awarded to Altren W. Neumann, III. He, like Cermak, had been working in the electrical field for almost twenty-five years (Doc. 30, Ex. 4, 3rd-5th pages). His jobs included working for the Hillsborough County School Board as an apprenticeship instructor teaching a curriculum that included electrical and instrumentation theory (id., 4th page). He also worked, pertinently, for Hamilton Electric as a

foreman of a crew involved in the construction of a wastewater treatment plant for Hillsborough County (id.).

The lengthy and concentrated work experience of these two individuals in the electrical field is definitely greater than the plaintiff's. Obviously, the plaintiff has some qualifications in that field since, otherwise, he would not have been placed on the eligible list for the job.  However, his work experience compares unfavorably with that of Cermak and Neumann.

In his response to the summary judgment motion, the plaintiff makes only a cursory argument about this position (Doc. 19, p. 7).  He notes that, before they were hired, they both worked for Mosaic (id.), but that fact has no apparent bearing on the claim of discrimination.  He states further that "[t]he plaintiff was not interviewed although he had more education and experience than the comparators" (id.).  However, he did not have more experience than Cermak and Neumann; he had less.  Moreover, his education cannot close the gap in qualifications.  The plaintiff's mechanical engineering degree would not carry significant weight in the plaintiff's application for the job of AWT Plant Technician III.  Further, while the plaintiff studied in the electrical field at Tampa Tech Institute between April 2000 and July 2001, that

education still leaves the plaintiff's credentials well short of those possessed by Cermak and Neumann.[14]

Accordingly, the plaintiff's education and experience are not clearly superior to the work history of Cermak and Neumann. Moreover, the plaintiff's application for the job of AWT Plant Technician III was pending when he sent his vituperative e-mail accusing the human resources people of lying and discrimination. This negative factor diminishes the qualifications that the plaintiff did have for the job of AWT Plant Technician III. Everything considered, the plaintiff unquestionably did not have clearly superior qualifications as compared with those of Cermak and Neumann. Consequently, an inference of discrimination cannot arise with respect to the position of AWT Plant Technician III.

10.   The final job at issue is Sewer Operations Engineering Support Technician. That job was awarded to Daniel R. Hittle.

Neither Hittle, nor the plaintiff, has listed any experience working with sewer systems (Doc. 30, Exs. 19, 24). However, the nature of the work

---

[14]The plaintiff's statement of his studies in the electrical area are vague and inconsistent. On his application, he indicated that, at the Tampa Tech Institute, he was pursuing an associate's degree in "elec" but did not graduate, although he earned 175 credits (Doc. 30, Ex. 24, 1st page). In his responsive memorandum, he stated that he was in a "7 semester bachelor program" and that he earned 72 credit hours (Doc. 19, p. 4).

listed in the job announcement did not even mention sewers (see Doc. 30, Ex.

18). Thus, the job description included the following (id.):

> Performs responsible technical work involving system and compliance inspections, surveying and complaint investigation. Under general supervision, work is of more than average difficulty and requires the application of a practical knowledge of the methods and techniques of engineering construction. Employees are responsible for conducting detailed, continuous reviews of materials, methods, and workmanship to assure that each part of the job is completed in accordance with the plans and specifications.

Hittle, at the time he applied, was the foreman of a crew engaged

in the pulling, and placing, of fiber optic cable and copper cables (Doc. 30, Ex.

19, 4th page). He had done similar work for a number of years before (id., 4th-

6th pages). He also listed skills such as the use of backhoes and trenchers (id.,

6th page). The City plainly concluded that this work experience suited the job

it was seeking to fill.

The plaintiff also had relevant work experience, as reflected by

the fact that he was placed on the eligible list for the job (Doc. 32-2, p. 15).

However, the plaintiff's application does not set forth any work experience that

is especially fitting for the job of Sewer Operations Engineering Support

Technician (see Doc. 30, Ex. 24). Again, the plaintiff in his responsive

memorandum merely asserts as to this job that he "had more education and experience than the comparators," but he made no attempt to specify what that experience was (Doc. 19, p. 8).

Under these circumstances, the plaintiff has failed to show that his qualifications were clearly superior to Hittle's. Moreover, the difficulty in comparing the somewhat different technical skills of the two applicants underscores the need for the court to refrain from second-guessing the employer's hiring decision.

In addition, as previously explained, there are factors beside education and experience that are taken into consideration when making an employment determination. Those factors with respect to this job strongly counsel against hiring the plaintiff.

The plaintiff's application for this job was also pending when he e-mailed his accusations of lying and discrimination (Doc. 32-2, p. 16). Importantly, the job description for the position of Sewer Operations Engineering Support Technician stated the following: "Participates in assignments that require considerable contact with the general public and the exercise of tact and courtesy" (Doc. 30, Ex. 18, 1st page). The plaintiff's e-mail demonstrates that the plaintiff does not meet this job requirement. An

employer who is offering a job involving considerable contact with the public would undoubtedly conclude that an applicant who would explode with rude and intemperate remarks when he has several applications for employment pending cannot be trusted to exercise tact and courtesy when dealing with the public.

There are, in addition, other factors that indicate that, overall, Hittle is a more qualified candidate than the plaintiff for the position. Thus, by virtue of his degree in mechanical engineering, the plaintiff is overqualified for the position. As previously explained, the Eleventh Circuit has concluded that this is a valid consideration in a hiring decision, and, in fact, the plaintiff has quit a recent job because it had little to do with his engineering and educational background (Doc. 17, pp. 40-41). See Woody v. St. Clair County Commission, supra, 885 F.2d at 1557.

Further, Hittle wrote on his application that "I have left every job with very good terms" (Doc. 30, Ex. 19, 8th page). The plaintiff cannot say the same in light of his termination by HARTline.

Under these circumstances, no inference of discrimination arises from the City's failure to hire the plaintiff for the job of Sewer Operations Engineering Support Technician.

IV.

The plaintiff filed this lawsuit alleging that the City discriminated against him on the basis of religion and national origin in connection with applications for employment. The plaintiff has come forward with no probative evidence of discrimination. He relies merely upon a comparison of his qualifications and those of the successful applicant. As to each of the jobs, the plaintiff has failed to show that the disparities in qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, would have chosen the candidate selected over the plaintiff for the jobs in question. This circumstance, particularly when coupled with other factors that militate against the plaintiff's selection, warrants dismissal of all of the plaintiff's claims.

It is, therefore, upon consideration

ORDERED:

That the City of Tampa's Amended Motion for Summary Judgment Pursuant to Rule 56, Federal Rules of Civil Procedure (Doc. 30) be, and the same is hereby, GRANTED. The Clerk of Court shall accordingly enter judgment against the plaintiff, and in favor of the defendant, dismissing the lawsuit. The Clerk shall thereupon CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 2nd day of May, 2008.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE